890 P.2d 1322

**Dallas Martin McCASLAND, and Irene Alma McCasland, Plaintiffs–Appellees,**

v.

**Jack Thomas MISKELL, Seven Rivers Cattle & Commodities, Inc., and Zia Feedlot, Inc., Defendants–Appellants.**

No. 15295.

Court of Appeals of New Mexico.

Dec. 2, 1994.

W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A., Carlsbad, for defendants-appellants Seven Rivers Cattle & Commodities, Inc. and Zia Feedlot, Inc.

Kelly Mack Cassels, Sanders, Bruin, Coll & Worley, P.A., Roswell, for plaintiffs-appellees.

Rebecca Dempsey, Sp. Asst. Atty. Gen., Santa Fe, for amicus curiae State Engineer.

## OPINION

DONNELLY, Judge.

Appellants, Seven Rivers Cattle and Commodities, Inc. and Zia Feedlot, Inc., appeal from a judgment of the district court declaring Dallas M. and Irene A. McCasland (the McCaslands) to be the owners of 28.74 acre-feet of Hagerman Canal irrigation ditch water rights and upholding the transfer of such water rights to other realty. We discuss whether the district court erred (1) in finding that the McCaslands were the owners of the disputed water rights, and (2) in determining that the disputed water rights were properly transferred for use upon other land. For the reasons discussed herein, we reverse.

## FACTS

The facts underlying the dispute between the parties are complex, and the property involved herein has been the subject of repeated litigation. The genesis of the current litigation began when V.R. Barnett and Bessie M. Barnett (the Barnetts) acquired ownership of most of the Northwest Quarter of Section 9 in Township 14 South, Range 26 East, N.M.P.M., in Chaves County, together with the water rights appurtenant thereto. A portion of the water rights owned by the Barnetts consisted of 28.74 acre-feet of Hag-erman Canal irrigation ditch water rights. In addition to the irrigation ditch water rights, the Barnetts also owned 134.0 acre-feet of irrigation well water rights that were appurtenant to such tract. The Barnetts built a feed yard and mill on a 70–acre parcel (the feed yard property), situated within the quarter section owned by them. They transferred the water rights for the 134.0 acre-feet, held under State Engineer File No. RA–4942, to this 70–acre parcel. Following the building of the feed yard and mill, they transferred ownership of the feed yard property to Barnett Feed Yards, Inc. by a deed dated March 1, 1967. Thereafter, the Barnetts mortgaged both the feed yard property and the remaining land in the quarter section owned by them to the Federal Land Bank of Wichita (the Federal Land Bank).

In 1975 Barnett Feed Yards, Inc. filed bankruptcy. On October 27, 1981, the Trustee in Bankruptcy (the Trustee) conveyed the feed yard property to Weldon and Dixie Wagner (the Wagners). The Federal Land Bank consented to the sale to the Wagners. The deed from the Trustee to the Wagners did not contain any reservation of water rights. Approximately one month later, the Trustee executed and delivered a special warranty deed to the Wagners for the same property. The latter deed specifically conveyed to the Wagners 134.0 acre-feet of irrigation well water rights described in State Engineer File No. RA–4942, but the deed did not mention the 28.74 acre-feet of ditch water rights which were also appurtenant to the feed yard property. After acquisition of the feed yard property, the Wagners filed an application for a change of ownership of water rights with the State Engineer. The application only referred to the 134.0 acre-feet of irrigation well water rights, and did not mention the 28.74 acre-feet of irrigation ditch water rights.

In 1982 the Federal Land Bank filed suit to foreclose its mortgage on the lands owned by the Barnetts. The Wagners and the Trustee were also joined as defendants in the action. In May 1983 a final decree of foreclosure was entered by the district court of Chaves County in the foreclosure action. The court also found that the deed from the

Barnetts to Barnett Feed Yards, Inc., dated March 1, 1967, was "a nullity, the description being inadequate to define the property being conveyed; [and that] the parties herein acquiesced in the submission of the [feed yard property] to sale at auction in the bankruptcy [proceeding]." Additionally, the court found that the real property "less and except the [feed yard property] should be sold in the manner and form prescribed by law."

The McCaslands were the successful bidders at the Federal Land Bank foreclosure sale and, on July 7, 1983, a special master's deed was issued to them conveying the property previously owned by the Wagners, except for the feed yard property and the well water rights appurtenant to the feed yard property as contained in State Engineer File No. RA–4942. The McCaslands thereafter filed an application for a change of ownership of water rights with the State Engineer for 184.9 acre-feet of water rights. The application included the 28.74 acre-feet of irrigation ditch water rights, which are the subject of this appeal. Following the filing of their application, the McCaslands began using the 28.74 acre-feet of irrigation ditch water rights upon property owned by them.

In August 1984 the Wagners, as owners of the feed yard property, deeded the tract to Wagner Alfalfa Mill, Inc., "together with all improvements thereon, [and] all water rights appurtenant thereto." Following this conveyance, Wagner Alfalfa Mill, Inc. mortgaged the feed yard property and the appurtenant water rights to the First Interstate Bank of Roswell. The bank subsequently foreclosed its mortgage, and the bank was the successful bidder at the special master's sale. Thereafter, the bank sold the feed yard property to Jack T. Miskell.

On April 25, 1990, Gene Cary, doing business as Mill & Elevator Supply Co., filed a mechanic's and materialman's lien against the property owned by Miskell. The lien was subsequently foreclosed against Miskell and his interest in the feed yard property. At the ensuing special master's sale, Seven Rivers Cattle and Commodities, Inc. (Seven Rivers) was the successful bidder, and title to the property again changed hands. Following its acquisition of the feed yard property,

Seven Rivers conveyed title to the property to Zia Feedlot, Inc.

In July 1992 the McCaslands filed suit seeking to have the district court declare that they were the owners of the water rights claimed by Seven Rivers, and requesting an order compelling the owners of the feed yard property to consent to the severance of the water rights from the feed yard property. Following a trial on the merits, the district court entered judgment in favor of the McCaslands. Appellants have filed a timely appeal therefrom.

## OWNERSHIP OF WATER RIGHTS

Appellants contend that they acquired title to the feed yard property originally owned by the Barnetts, together with the 28.74 acre-feet of Hagerman Canal irrigation ditch water rights, which they assert remained appurtenant to the property. Appellants also argue that neither the McCaslands nor any of their predecessors in title ever legally severed the water rights from the feed yard property or validly changed the location or the place of use of such water rights. Thus, Appellants contend that the district court erred in finding that the McCaslands were the owners of the disputed water rights.

Responding to Appellants' contentions, the McCaslands argue that the special warranty deed from the Trustee only conveyed 134.0 acre-feet of water rights under State Engineer File No. RA–4942, and the Trustee retained all other water rights held by Barnett Feed Yards, Inc., so that title to the retained rights passed to the McCaslands as purchasers at the Federal Land Bank mortgage foreclosure sale.

■ In order to evaluate the merits of these contentions we must first examine the chains of title relied upon by the respective parties. We start with the fact that it is undisputed that the 28.74 acre-feet of Hagerman Canal irrigation ditch water rights were appurtenant to the feed yard property. Following the bankruptcy action involving Barnett Feed Yards, Inc., the Trustee gave a quitclaim deed to the Wagners conveying the feed yard property to them. The quitclaim deed did not contain any reservation or exception of any of the water rights appurte-

393

nant to such property. The Federal Land Bank also acquiesced in the sale of the feed yard property by the Trustee to the Wagners. The special warranty deed subsequently issued by the Trustee to the Wagners covering the feed yard property, although specifically conveying 134.0 acre-feet of water rights "appurtenant thereto under State Engineer File No. RA–4942," did not contain any exception or reservation concerning the 28.74 acre-feet of Hagerman Canal irrigation ditch water rights. Similarly, the quitclaim deed from the Trustee to the Wagners for the feed yard property did not contain any reservation of rights; hence, under NMSA 1978, Section 47–1–34 (Repl. Pamp.1991), title to the feed yard property, together with all appurtenant rights, passed to the Wagners, as grantees. The fact that the Trustee later gave a special warranty deed to the Wagners for the same property, and which expressly conveyed an interest in other water rights, did not have the effect of reserving any interest in the 28.74 acre-feet of irrigation ditch water rights. *See id.*

■ The Federal Land Bank's foreclosure proceeding expressly excepted any title to the feed yard property, and the special master's deed to the McCaslands provided that the conveyance included water rights appurtenant to the lands conveyed "LESS AND EXCEPT ... the water rights appurtenant [to the feed yard property]." Thus, we conclude that the 28.74 acre-feet of irrigation ditch water rights remained appurtenant to the feed yard property subsequently acquired by Zia Feedlot, Inc., one of the Appellants herein.

The chain of title of the McCaslands and their claim to the disputed water rights devolves from the deed issued by the special master following the mortgage foreclosure action brought by the Federal Land Bank. The deed given by the special master to the McCaslands recited that the property conveyed included:

[A]ll water rights and all wells and equipment used for irrigation of said land, including, but not limited to RA–1333–E, RA–1410–A, HC–56(A), RA–4942–S, HC–71 (ABCD), RA–5399, RA–4942, HC–1(A),

HC–84. Subject to Exception as to RA–4942.

Together with a pro rata interest in the water and water rights of the Hagerman Irrigation Company by reason of the inclusion of the above described land, or a portion thereof, within said project.

The deed, however, specifically excepted from the property conveyed, the feed yard property "and the water rights appurtenant thereto." Following the McCaslands' purchase of the property at the foreclosure action, they filed an application for change of ownership of water right with the State Engineer's office relating to the irrigation water rights, including the 28.74 acre-feet of Hagerman Canal irrigation ditch water rights.

■ A water right is appurtenant to the land of a landowner who has applied it to a beneficial use. *Middle Rio Grande Water Users Ass'n v. Middle Rio Grande Conservancy Dist.*, 57 N.M. 287, 299, 258 P.2d 391, 398 (1953); *see Murphy v. Kerr*, 296 F. 536, 541 (D.N.M.1923), *aff'd*, 5 F.2d 908 (8th Cir. 1925). Absent evidence indicating a contrary intention, a conveyance of land carries with it the water rights appurtenant to such land. *First State Bank v. McNew*, 33 N.M. 414, 423, 269 P. 56, 60 (1928); *see Silverstein v. Carlson*, 118 Idaho 456, 797 P.2d 856, 860 (1990); *Department of State Lands v. Pettibone*, 216 Mont. 361, 702 P.2d 948, 955 (1985); *Foster v. Sunnyside Valley Irrigation Dist.*, 102 Wash.2d 395, 687 P.2d 841, 844 (1984) (en banc); *see also* 78 Am.Jur.2d *Waters* § 243 (1975) (discussing passage of water rights with land).

■ The parties stipulated that the disputed water rights were never used on the feed yard property after 1984 and that the McCaslands have used the water on the larger tract since then. Examining the respective chains of title upon which the McCaslands and Appellants rely in light of the above authorities, we think it is clear that, although the McCaslands used the 28.74 acre-feet of Hagerman Canal irrigation ditch water rights on lands other than the feed yard property, the water rights remained appurtenant to the feed yard and thus passed to Appellants. No deed or judicial decree has effected a valid transfer or severance of

the water rights to the lands acquired by the McCaslands.

■ The McCaslands alternatively argue that even if the disputed water rights are determined to be appurtenant to the feed yard property, the water rights were in fact used by the Barnetts and the McCaslands on other lands owned by them, and that the trial court in the exercise of its equitable power could properly determine that the long-continued use of such water rights at a different location was sufficient to permit a finding of a de facto transfer of such water rights. The McCaslands, although conceding that the Barnetts failed to follow the procedural requirements of NMSA 1978, Section 72–5–23 (Repl.1985), for transferring the water rights in question, argue that the Barnetts in fact began using the ditch water rights on adjacent land over twenty years ago.

■ Appellants counter the arguments of the McCaslands by asserting that absent the consent of a landowner or valid court action, a water right may not be legally severed or transferred from the land to which it is appurtenant. Appellants also argue that a landowner or other party seeking to sever a water right from the land to which it is appurtenant must comply with the statutory method for severing such water right before any transfer becomes effective. We agree.

The method for transferring an existing water right is governed by NMSA 1978, Section 72–5–22 (Repl.1985) and Section 72–5–23. Section 72–5–22 recognizes the right of a party holding a water right to assign such right, but specifies that no assignment "shall be binding except upon the parties thereto, unless filed for record in the office of the state engineer." Section 72–5–22 also provides, in pertinent part:

[N]o right to appropriate water, except water for storage reservoirs, for irrigation purposes shall be assigned, or the ownership thereof in anywise transformed, apart from the land to which it is appurtenant, *except in the manner specially provided by law[;]* provided, further, that the transfer of title of land in any manner whatsoever shall carry with it all rights to the use of water appurtenant thereto for irrigation purposes, unless previously alienated *in the manner provided by law.* [Emphasis added.]

We think the phrases "in the manner specially provided by law," or "in the manner provided by law," used by the legislature in the Section 72–5–22, mean in accordance with existing statutory procedure. *See Trujillo v. Tanuz,* 85 N.M. 35, 40, 508 P.2d 1332, 1337 (Ct.App.1973) (phrase " 'provided by law' " construed to mean " 'provided by [statutory] law' "); *see also* Black's Law Dictionary 1224 (6th ed. 1990) (phrase "provided by law," when used in a statute, "generally means prescribed or provided by some statute").

The State Engineer, appearing as Amicus herein, concurs in this portion of Appellants' argument. The State Engineer asserts that absent compliance with Section 72–5–23, the use of the disputed water rights by the Barnetts at a location away from the feed yard property, irrespective of the length of such use, was insufficient to effect a valid change in the place of use of such rights or a valid transfer of such rights. Section 72–5–23 sets out the mechanism for severing and transferring water rights from the lands to which they are appurtenant. Section 72–5–23 provides:

All water used in this state for irrigation purposes, except as otherwise provided in this article, shall be considered appurtenant to the land upon which it is used, and the right to use it upon the land shall never be severed from the land without the consent of the owner of the land, but, by and with the consent of the owner of the land, all or any part of the right may be severed from the land, simultaneously transferred and become appurtenant to other land, or may be transferred for other purposes, without losing priority of right theretofore established, if such changes can be made without detriment to existing water rights and are not contrary to conservation of water within the state and not detrimental to the public welfare of the state, on the approval of an application of the owner by the state engineer. Publication of notice of application, opportunity for the filing of objections or protests and a hearing on the application shall be pro-

vided as required by Sections 72–5–4 and 72–5–5 NMSA 1978.

The State Engineer also points out that the 28.74 acre-feet of irrigation ditch water rights were previously adjudicated to be appurtenant to specific tracts of land described in Subfile Order No. 71 entered by the district court of Chaves County in *State of New Mexico ex rel. State Engineer* and *Pecos Valley Artesian Conservancy District v. Lewis*, Nos. 20294 and 22600 (Apr. 2, 1963), as consolidated. The State Engineer further reasons that a change in the place of use of a water right may lawfully be made in only one of two ways: (1) by amending Subfile Order No. 71 by showing that the place of beneficial use was wrong at the time the order was entered; or (2) by complying with the statutory and administrative procedures regulating a change in place of use. The State Engineer also contends that despite the application of the disputed water rights to beneficial use at a location different from the adjudicated place of use, the transfer is not valid until the requirements of Section 72–5–23 have been met. We agree. *Cf.* Charles T. DuMars, *New Mexico Water Law: An Overview and Discussion of Current Issues*, 22 Nat.Resources J. 1045, 1047 (1982) ("Although an individual can assign his water rights to another, such an assignment is binding only between those two parties unless the procedures of the State Engineer are followed.").

In enacting Section 72–5–23, the legislature created a statutory procedure governing the manner by which appropriators may change the place of use of water rights. Under this statute applications to change the place of use must be filed with the State Engineer. Thereafter, the State Engineer is required to determine whether the change would adversely affect the water rights of existing water users or would be contrary to the public welfare and conservation of water. *See Honey Boy Haven v. Roybal*, 92 N.M. 603, 604–05, 592 P.2d 959, 960–61 (1978) (party seeking to change point of diversion of use of water is required to seek approval of state engineer before it utilizes water at different location); *Garbagni v. Metropolitan Investments, Inc.*, 110 N.M. 436, 441, 796 P.2d 1132, 1137 (Ct.App.) (in order to perfect water right, party must make application with and obtain approval from state engineer and establish a valid right), *cert. denied*, 110 N.M. 330, 795 P.2d 1022 (1990); *Ensenada Land & Water Ass'n v. Sleeper*, 107 N.M. 494, 498, 760 P.2d 787, 791 (Ct.App.) (right to change the place of diversion is subject to limitation that rights of other water users not be impaired), *cert. quashed*, 107 N.M. 413, 759 P.2d 200 (1988); *see also Eldorado at Santa Fe, Inc. v. Cook*, 113 N.M. 33, 36, 822 P.2d 672, 675 (Ct.App.) (due process requires that holders of water rights are entitled to notice and opportunity to be heard), *cert. denied*, 113 N.M. 1, 820 P.2d 435 (1991). *See generally* George A. Gould, *Transfer of Water Rights*, 29 Nat.Resources J. 457 (1989).

As observed by Professor Charles T. Du-Mars in an article in 6 *Waters and Water Rights* 293 (Robert E. Beck, editor-in-chief, 1991 ed.): "Water rights can be transferred. Transfers must be approved by the State Engineer through the same process used for approving permits to appropriate. [NMSA 1978, §§ 72–5–23, –24, 72–12–7]." Unless the statutory procedures for changing a place of use are complied with, however, no lawful change can be effected. *Cf. Sun Vineyards, Inc. v. Luna County Wine Dev. Corp.*, 107 N.M. 524, 527, 760 P.2d 1290, 1293 (1988) (validity of water right is based upon application to beneficial use and compliance with lawful procedure); *Eldorado at Santa Fe, Inc.*, 113 N.M. at 36, 822 P.2d at 675 (failure to follow statutory procedure renders action invalid).

■ Thus, mere use of the 28.74 acre-feet of Hagerman Canal irrigation water on another parcel did not effect a transfer of those water rights from the feed yard to the other tract. The state district court adjudications in *State of New Mexico ex rel. State Engineer* and *Pecos Valley Artesian Conservancy District v. Lewis* fixed the amount of water appurtenant to the feed yard property and that adjudication was binding. *Cf. W.S. Ranch Co. v. Kaiser Steel Corp.*, 79 N.M. 65, 68, 439 P.2d 714, 717 (1968) (once water right fixed by court, party wishing to transfer that right can rely on the adjudication). Where, as here, one party uses water which is appurtenant to one tract on lands other than the

tract to which it is appurtenant, without the approval of the State Engineer and in violation of statute, the party suffering the wrong has a remedy. *Chavez v. Gutierrez*, 54 N.M. 76, 83, 213 P.2d 597, 601 (1950). In the present case, Zia Feedlot, Inc., owner of the appurtenant land, is entitled to judgment upholding its ownership of·the 28.74 acre-feet of Hagerman Canal irrigation water appurtenant to the feed yard property.

## CONCLUSION

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion. Appellants are awarded their costs on appeal.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.