2003-NMCA-136

81 P.3d 564

**William M. TURNER, in his official capacity as Trustee of and on behalf of Manzano Resources, an express, common law business trust, and West–Water Resources, an express, common law business trust, Plaintiffs–Appellants,**

v.

**Carroll G. BASSETT, Gordon R. Bassett, James N. Bassett, Bassett Brothers Water Sales Company, Hydro Source, Inc., a New Mexico Corporation, Estancia Basin Water Supply, LLC, a New Mexico Limited Liability Company, Edgewood Water Cooperative, Inc., a Non–Profit New Mexico Corporation and All Unknown Claimants of Interest in the Water Rights Adverse to Plaintiffs, Defendants–Appellees.**

No. 22,877.

Court of Appeals of New Mexico.

Sept. 23, 2003.

Certiorari Granted, No. 28,317, Nov. 6, 2003.

Elizabeth Newlin Taylor, Jolene L. McCaleb, Wolf, Taylor & McCaleb, P.A., Albuquerque, for Appellants.

Susan C. Kery, Ray M. Vargas, II, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, for Appellees.

DL Sanders, General Counsel, Tanya L. Scott, Special Assistant Attorney General, Santa Fe, for Amicus Curiae New Mexico State Engineer.

*OPINION*

BUSTAMANTE, J.

{1} This case arises from a dispute over the ownership of water rights following a sale of land (the property) pursuant to a real estate contract to Manzano Resources. William M. Turner, in his official capacity as Trustee of Manzano Resources and Westwater Resources (Turner), filed suit to quiet title to the water rights at issue. Turner amended the complaint to allege negligent misrepresentation and conversion, as well as to state claims for restitution and declaratory judgment.

{2} Following a hearing, the trial court granted summary judgment in favor of Defendants Carroll G. Bassett, Gordon R. Bassett, James N. Bassett, Bassett Brothers Water Sales Company (collectively referred to as the Bassetts), and Hydro Source, Inc., Estancia Basin Water Supply, L.L.C., and Edgewood Water Cooperative, Inc. The trial court determined that: (1) the Bassetts had successfully severed the water rights associated with the land prior to selling the property; (2) even if the water rights had not been successfully severed, New Mexico's adverse possession statute, NMSA 1978, § 37–1–22 (1973), precluded Turner's action in its entirety; and (3) even if the trial court was wrong on the first two points, Turner's claims for negligent misrepresentation and conversion were barred by the applicable statutes of limitations.

{3} Concluding that the Bassetts failed to successfully sever the water rights from the land prior to sale of the property, and concluding that adverse possession of water rights cannot occur in New Mexico, we reverse and remand for trial on the merits on Turner's action to quiet title, and for trial on the merits of Turner's remaining claims for restitution and declaratory judgment. Having concluded that adverse possession cannot be had in water rights, as a matter of law, we do not address either the adequacy of the trial court's findings related to adverse possession or the adequacy of the facts to support a finding of adverse possession. We affirm on preservation grounds the trial court's dismissal of Turner's claims for negligent misrepresentation and conversion.

**BACKGROUND**

{4} Ray Bassett established the water rights in question by filing a declaration in 1950, as provided by law. *See* NMSA 1978, § 72–12–5 (1931) (providing for the declaration of beneficial use of a vested water right); *see also* NMSA 1978, § 72–12–18 (1983) (providing that all underground waters in New Mexico are public waters subject to appropriation for beneficial use). The declaration stated that Ray Bassett was irrigating 125 acres with underground water. The Bassetts owned several irrigation water rights in addition to the rights declared in the 1950 declaration.

{5} In 1974, Ray Bassett filed an Application for Permit to Change Place or Purpose of Use, Combine and Appropriate Underground Waters (the 1974 application). The 1974 application requested that the State Engineer allow the Bassetts to sever the water rights from the land (which includes the property later conveyed to Turner), combine water from three wells, and use that combined water for continued irrigation of the same land and additional land, as well as for commercial, industrial, domestic, and housing subdivision purposes. The State Engineer approved the application, in part, and granted a permit (the 1976 permit), subject to the condition that "[p]roof of application of water to beneficial use shall be filed on or before Dec. 15, 1976."

{6} The Bassetts contend that the 1976 permit states that the subject water rights were severed from the property. We disagree. The 1976 permit only states that the water rights "are to be severed," indicating an event yet to occur. Our reading is supported by a 1980 State Engineer Memorandum indicating that water rights "may eventually be severed" from the property.

{7} The Bassetts obtained a second permit in 1979, subject to the same conditions set forth under the 1976 permit, which enlarged the area in which the water could be used. Starting in 1980, the Bassetts began filing a series of applications for extensions of time in which to put the water to beneficial use. The Bassetts, however, never complied with the conditions in the 1976 and 1979

permits requiring that they file proof of application of water to beneficial use. As a result, the State Engineer never issued a certificate and license to appropriate the water. The Bassetts stopped irrigating the land around 1981, and were not irrigating the land at the time of the conveyance.

{8} The property was sold to Manzano Resources in 1984. At the time of the conveyance, both the Bassetts and Turner may have been operating under the belief that there were no water rights appurtenant to the property. The Bassetts may have believed, and represented to Turner, that they had already severed the water rights from the property. It is undisputed that water rights were not negotiated during the sale. It is disputed whether the Bassetts reserved the water rights in the sale documents. Turner claims that based on the Bassetts' representation that the water rights had been severed, he filed a petition in 1987 for reclassification of property from "prime farm land" to "dry land."

{9} In 1991, the Bassetts conveyed their interest in the water rights to Hydro Source, Inc. In 1998, Hydro Source, Inc. filed a change of ownership of the water rights to Estancia Basin Water Supply, L.L.C. with the State Engineer. In late August of 1998, Turner became aware of the conveyance to Estancia Basin. Upon learning of the conveyance, Turner began investigating whether the Bassetts had reserved the water rights. Turner obtained a copy of the warranty deed for the property, and found that it contained no express and specific reservation of water rights. In September, Turner filed a Change of Ownership of Water Rights to Westwater Resources. In October 1998 Turner received a copy of a letter from the State Engineer to Carroll Bassett. The letter noted that both parties had filed change of ownership of water rights for the same water and asked for clarification of the matter. Turner filed an action to quiet title in August 1999. The trial court granted summary judgment in favor of all Defendants and this appeal followed.

## DISCUSSION

### Standard of Review

{10} "Summary judgment is appropriate where there are no genuine issues of materi-al fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. On appeal, we review de novo the trial court's decision to grant summary judgment. *See Hasse Contracting Co. v. KBK Fin., Inc.,* 1999–NMSC–023, ¶ 9, 127 N.M. 316, 980 P.2d 641. We must view the pleadings, affidavits, and depositions presented, for and against a motion for summary judgment, in a light most favorable to the nonmoving party. *See Gardner–Zemke Co. v. State,* 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). Summary judgment is foreclosed either when the record discloses the existence of a genuine controversy concerning a material issue of fact, or when the trial court granted summary judgment based upon an error of law. *See id.; see also Garcia v. Sanchez,* 108 N.M. 388, 395, 772 P.2d 1311, 1318 (Ct.App.1989).

### Severance of Water Rights

{11} The trial court determined that the facts material to disposition of this issue are not in dispute. We agree. We, however, hold that the trial court erred as a matter of law when it concluded that the Bassetts successfully severed the appurtenant water rights prior to sale of the property. *See id.* at 395, 772 P.2d at 1318 (holding that summary judgment may be reversed when it is based on an error of law). The trial court decided that the water rights had been severed prior to the sale because (1) the Bassetts had applied for and received conditional permits to Change Place or Purpose of Use, Combine and Appropriate Underground Waters in 1974 and 1979; and (2) the Bassetts had stopped irrigating the land in 1981, four years prior to the sale. The trial court decided that the Bassetts had exercised "reasonable diligence toward the overall development of the beneficial use to adequately reserve the rights and to result in a severance." We find that the trial court misconstrued the test for determining whether a severance has occurred, and thereby misapplied the law to the relevant undisputed facts.

{12} *Sun Vineyards, Inc. v. Luna County Wine Development Corp.,* 107 N.M. 524,

760 P.2d 1290 (1988) is dispositive of this issue. In *Sun Vineyards, Inc.,* our Supreme Court held that water rights do not become vested under an application for a permit until all State Engineer procedures are complied with. *Id.* at 527, 760 P.2d at 1293. Specifically, final proofs and surveys must be filed with the State Engineer, demonstrating that the water has been put to beneficial use, at which time the State Engineer will issue a certificate and license. *Id.; see also* 19.27.1.33 NMAC (2001) (lands to which water rights are transferred must be surveyed and maps prepared and included in the final inspection and report); 19.27.1.25 and 19.27.1.34 NMAC (2001) (approval by State Engineer granted only after proper application is made and license shall be issued when all required documents have been filed). The applications filed by the Bassetts were subject to the condition that "[p]roof of application of water to beneficial use shall be filed." The Bassetts never fulfilled this condition. As a result, the State Engineer has never issued a certificate and license for the Bassetts to appropriate the water.

{13} The Bassetts, relying on *Sun Vineyards, Inc.,* contend that in order to determine whether appurtenant water rights were successfully severed prior to a conveyance, the pertinent question is whether they exercised " 'reasonable diligence' to continue the process of the transfer." They argue that by filing extensions, they exercised reasonable diligence to continue the process and that alone is sufficient to establish a severance. The trial court evidently accepted this contention in reaching its decision.

{14} In *Sun Vineyards, Inc.,* however, the Supreme Court specifically held that when a person claiming severance conveys property without reserving the water rights, that conveyance results in the discontinuation of the severance process. 107 N.M. at 527, 760 P.2d at 1293. The Supreme Court stated:

> From [*State ex rel. Reynolds v.] Mendenhall*[, 68 N.M. 467, 362 P.2d 998 (1961) ] we recognize that, whereas approval of the application would have permitted the owner to undertake spreading, the transfer would not vest until the spreading ripened into valid rights through beneficial use as documented by final proofs and surveys. Only then would a certificate and license issue. Here, Wine Development did not reserve the right to continue the procedure necessary to accomplish a beneficial spreading of water rights from the 84.48 acres. Conveyance of the 84.48 acres without reservation resulted in the discontinuation of a procedure which could have reduced existing water rights through their proportionate transfer to adjacent land. Through reasonable diligence, the transfer may have vested had the procedure not been discontinued. It is the act of putting the water to beneficial use, not the intent to do so, that is the measure and the limit to the vesting of the transfer. In other words, once Wine Development sold the land, without reservation of rights, the procedure necessary to accomplish a beneficial use of water through spreading was interrupted and a proportionate transfer from the conveyed land was prevented from vesting.

*Id.* We read *Sun Vineyards, Inc.* to equate reasonable diligence with the traditional requirement that a party to a sale of property must reserve water rights if they do not wish to convey them with the property. *Id.; see also Twin Forks Ranch, Inc. v. Brooks,* 120 N.M. 832, 835, 907 P.2d 1013, 1016 (Ct.App. 1995) (noting that even where both parties mistakenly believe that there are no water rights appurtenant to the land, appurtenant water rights must be reserved in sale documents for such rights to not pass with the land); NMSA 1978, § 72–5–22 (1907) and § 72–5–23 (1985). In stating that "the transfer may have vested had the procedure not been discontinued," the Supreme Court was clearly referring to the conveyance of the property as the critical act resulting in the discontinuation of the procedure. *Sun Vineyards, Inc.,* 107 N.M. at 527, 760 P.2d at 1293.

{15} In the present case, the procedure was similarly discontinued by the sale of the property. The property was sold in 1984. Water rights were not negotiated, and there is a question of fact as to whether the Bassetts effectively reserved the water rights

in the sale of the property or whether some of their defenses may apply. As was the case in both *Sun Vineyards, Inc.* and *Twin Forks Ranch, Inc.*, the sale of the property, prior to the completion of the procedures necessary to effect a severance, may have resulted in the possibly still appurtenant water rights being conveyed to Turner along with the property. *Sun Vineyards, Inc.*, 107 N.M. at 527, 760 P.2d at 1293; *Twin Forks Ranch, Inc.*, 120 N.M. at 833–34, 907 P.2d at 1014–15.

{16} The Bassetts also argue, and the trial court found, that the cessation of irrigation in 1981 completed the severance process. We disagree. The deciding factor for determining whether severance has occurred is completion of the necessary administrative steps and procedures, not the unilateral cessation of irrigation of land on which irrigation is still permitted. *Sun Vineyards, Inc.*, 107 N.M. at 527, 760 P.2d at 1293. In support of the argument that cessation of irrigation is the critical action for severance, the Bassetts rely on *KRM, Inc. v. Caviness*, 1996–NMCA–103, 122 N.M. 389, 925 P.2d 9. However, *KRM* addressed whether water rights which had *never* been used for irrigation were appurtenant to the land. *Id.* ¶ 3. In *KRM*, this Court determined that only water which has been put to beneficial use for irrigation purposes is appurtenant to the land. *Id.* ¶¶ 4, 11.

{17} The Bassetts emphasize that in reaching that conclusion, this Court quoted a Utah case, which interpreted a Utah statute to determine that "a vested water right is considered appurtenant to the land conveyed only to the extent that it is used to the land's benefit at the time of the conveyance." *Id.* ¶ 8 (quoting *Little v. Greene & Weed Inv.*, 839 P.2d 791, 796 (Utah 1992)) (internal quotation marks omitted). In *KRM*, this Court did not adopt the Utah rule requiring irrigation at the time of the conveyance. The Utah court established its rule based on established authority in Utah, which New Mexico does not share. *See Stephens v. Burton*, 546 P.2d 240, 242 (Utah 1976) (holding that the amount of water rights appurtenant to the land is the amount that is being used thereon, before and at the time of the sale).

Our own case law indicates the opposite result. *See McCasland v. Miskell*, 119 N.M. 390, 395, 890 P.2d 1322, 1327 (Ct.App.1994) (holding that failure to use irrigation water rights on conveyed property for more than ten years did not sever water rights from said property absent compliance with statutory requirements).

{18} *KRM* does not require that water rights, previously used for irrigation purposes and otherwise available, be in irrigation use at the time of a sale in order for the water rights to be appurtenant to the land. This reading of *KRM* is supported by the relevant statutory provision, which provides that:

> [A]ll waters appropriated for irrigation purposes, except as otherwise provided by written contract between the owner of the land and the owner of any ditch, reservoir or other works for the storage or conveyance of water, shall be appurtenant to specified lands owned by the person, firm or corporation having the right to use the water, *so long as the water can be beneficially used thereon, or until the severance of such right from the land in the manner hereinafter provided in this article.*

NMSA 1978, § 72–1–2 (1907) (emphasis added). Notably, Section 72–1–2 states that the test for appurtenance, prior to an official severance in accordance with the statutory requirements, is whether the water *can be* beneficially used, not whether the water is being so used at that particular time. At the time the property was sold, the water could have been used for irrigation on the property. The applications filed by the Bassetts requested that the State Engineer allow them to use the water rights at issue for *continued irrigation of the same land* and additional land, as well as for commercial, industrial, domestic, and housing subdivision purposes. The State Engineer correctly observes that because the applications allowed for continued irrigation of the same land, the applications did not effect a severance in accordance with Section 72–5–23. *See id.* (providing that "all or any part of the right may be severed from the land, simultaneously transferred and become appurtenant to other land, or may be transferred for other

purposes"). Accordingly, the water remained appurtenant to the land. Section 72–1–2. The fact that the Bassetts could also use the water rights for other purposes, in addition to using the water for the same purpose (irrigation) on the same land, does not alter the conclusion.

{19} We reverse the trial court's determination that the water rights had been severed from the property prior to the sale. We remand for further proceedings consistent with this opinion.

## Adverse Possession of Water Rights

{20} Having determined that the trial court erred in ruling that the water rights were severed, we are now confronted with the question of whether Turner's action to quiet title was time barred by New Mexico's adverse possession statute. *See* § 37–1–22 (providing that adverse possession of any lands, tenements, or hereditaments bars actions by another party seeking to assert title). Unless Section 37–1–22 can be applied to bar the claim, there is no statute of limitations applicable to actions to quiet title. *Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991) (noting that statutes of limitation do not apply to quiet title actions and that such actions can only be barred by our adverse possession statute).

{21} While noting that they "do not necessarily dispute that water rights cannot be created or acquired through the common law doctrine of adverse possession," the Bassetts contend that this Court need not determine whether water rights can be adversely possessed. The Bassetts reason that although Section 37–1–22 requires all the elements of adverse possession be proven for it to be applicable, the statute does not require an actual finding of adverse possession because the statute is aimed at the limitation of actions, not at acquisition of property. This assertion, however, disregards the fact that Section 37–1–22 is the statute under which title by adverse possession is established. *Hernandez v. Cabrera*, 107 N.M. 435, 436, 759 P.2d 1017, 1018 (Ct.App.1988). Furthermore, the Bassetts' contention ignores the plain language of the statute. The statute specifically states that the ten-year limitation

applies in "all cases where any person or persons, their children, heirs or assigns, *shall have had adverse possession* continuously and in good faith under color of title." Section 37–1–22 (emphasis added). Although the Bassetts are correct that Section 37–1–22 acts to limit actions, in order for it to apply, adverse possession must be established. *Id.* Accordingly, one must be able to adversely possess water rights for the adverse possession statute to apply to bar Turner's claim.

{22} The question of whether or not rights to water may be acquired through adverse possession has never, until now, been answered in New Mexico. *See Pioneer Irrigating Ditch Co. v. Blashek*, 41 N.M. 99, 102, 64 P.2d 388, 390 (1937) (noting that whether a water right is subject to being acquired by prescription is still an open question); *see also State ex rel. Reynolds v. W.S. Ranch Co.*, 69 N.M. 169, 175, 364 P.2d 1036, 1040 (1961) (passing on question of whether a water right is subject to being acquired by prescription). We now hold that water rights cannot be acquired by adverse possession. We base this holding on established principles of New Mexico law.

{23} All waters within New Mexico belong to the public. N.M. Const. art. XVI, § 2; NMSA 1978, § 72–12–1 (2003). In 1907, the legislature established a comprehensive water code, under which the statutory method of acquiring water rights became the exclusive means for acquiring water rights. NMSA 1978, § 72–1–1 to –10 (1907, as amended through 2003). Water appropriation is, as a result, governed exclusively by the permit system administered by the State Engineer. NMSA 1978, § 72–2–1 (1982); NMSA 1978, § 72–12–3 (2001); *see State ex rel. Reynolds v. King*, 63 N.M. 425, 428, 321 P.2d 200, 201 (1958).

{24} As the State Engineer observes, our water code contains no provision for the adverse possession of water rights. The omission of such a provision makes particular sense in light of the fact that adverse possession is based partly on the presumption that the owner has abandoned the property. *Williams v. Howell*, 108 N.M. 225, 227, 770 P.2d 870, 872 (1989). When water rights

are abandoned, unlike land, ownership of those rights reverts to the public and is regarded as unappropriated public water. Public water is governed exclusively by the permit system administered by the State Engineer. *State ex rel. Reynolds v. S. Springs Co.*, 80 N.M. 144, 146, 452 P.2d 478, 480 (1969); NMSA 1978, § 72–5–28 (2002); § 72–2–1; § 72–12–3. As there can be no right in an individual to interfere with public rights in water, adverse possession of water rights does not logically follow. *See, e.g., Trigg v. Allemand*, 95 N.M. 128, 134, 619 P.2d 573, 579 (Ct.App.1980).

{25} The Bassetts contend that adverse possession of water rights should nonetheless be permitted under the facts of this case, because the adverse possession did not begin with an illegal taking of water. A similar argument was raised in *Lewis v. State Board of Control*, 699 P.2d 822 (Wyo. 1985). The *Lewis* court summarily disposed of the argument, finding such a distinction to be patently inconsistent with the legislature's establishment of a comprehensive water code, under which the statutory method is the exclusive means of acquiring water rights. *Id.* at 825–26. Wyoming's statutory scheme for water appropriation is similar to our own. As the Wyoming court noted, acceptance of adverse possession, even where the water rights in question were not based on an initial illegal taking of water rights, would effectively cripple the permit procedure and make impossible the efficient administration of water. *Id.* We find Wyoming's analysis persuasive on this point.

{26} As the State Engineer contends, adverse possession would defeat the requirements established by the legislature to protect water rights from being impaired. *See, e.g.,* NMSA 1978, § 72–5–6 (1985); § 72–5–23; and NMSA 1978, § 72–12–13 (1965) (providing that it is the State Engineer's duty to make findings that a proposed appropriation or change to an existing water right does not impair existing rights, is not contrary to conservation, and will not be detrimental to the public welfare). In enacting the water code, our legislature recognized the importance of state supervision of the appropriation of waters, as well as the fact that such supervision

could not be effective, nor intelligently exercised, without accurate and complete information about proposed appropriations. *See, e.g.,* NMSA 1978, § 72–5–5.1 (1985) (recognizing the importance of public welfare and conservation of water in administering its public waters); § 72–12–3 (requiring application to the State Engineer, in the form prescribed by him, for the appropriation of any underground water, and itemizing information required to be contained in the application).

{27} The notion of adverse possession of water rights is also inconsistent with New Mexico case law. In 1994, this Court held that beneficial use of appurtenant irrigation water rights on other lands for more than twenty years was insufficient to permit the user to retain those rights upon a challenge by the owner of the land to which the water rights were appurtenant. *McCasland*, 119 N.M. at 393–96, 890 P.2d at 1325–28. The Bassetts correctly note that, in *McCasland*, this Court was not specifically addressing a claim of adverse possession, but rather an equitable argument that the "long-continued use of such water rights at a different location was sufficient to permit a finding of a de facto transfer of such water rights." *Id.* at 394, 890 P.2d at 1326. However, the issue is sufficiently analogous to an adverse possession claim to be highly informative of this Court's view on the issue. In *McCasland* we stressed the necessity of compliance with the statutory procedures set out in the water code for transfers of water rights to become effective. *Id.* at 394, 890 P.2d at 1326. We now reiterate the necessity of compliance with the statutory procedures set out in the water code for the creation, acquisition, or transfer of water rights. To the extent that the Bassetts contend that public policy alone mandates that we apply a statute of limitations to Turner's quiet title action, this Court's rejection of the equity-based argument in *McCasland* informs this Court otherwise.

{28} The Bassetts argue that *New Mexico Products Co. v. New Mexico Power Co.*, 42 N.M. 311, 77 P.2d 634 (1937), compels this Court to apply the adverse possession statute to bar Turner's claim. We find this case to

be inapposite. The Bassetts rely on our Supreme Court's statement that "[t]he rules of the statute of limitations, as the same are applied to land, are also applied to water rights," but they fail to note that the case was not a quiet title action. *Id.* at 321, 77 P.2d at 641 (internal quotation marks and citations omitted). *New Mexico Products* addressed whether a suit for damages caused by the obstruction of water flow and the use of water by an entity having the power of eminent domain could proceed. *Id.* Importantly, application of the adverse possession statute to claims against parties with the power of eminent domain is specifically provided for by statute. *Id.* We have no such statute in the present case. *New Mexico Products* simply does not address whether water rights can be adversely possessed.

{29} In accordance with our established case law, our comprehensive water code, and the public policy concerns noted above, we now determine that water rights cannot be obtained through adverse possession. Accordingly, we reverse the trial court's determination that Section 37–1–22 acts to bar Turner's action.

**Negligent Misrepresentation and Conversion Claims**

{30} The trial court held that, even if it were wrong as to both the severance issue and the adverse possession issue, Turner's claims for negligent misrepresentation and conversion are barred by the relevant statutes of limitation, NMSA 1978, § 37–1–8 (1976) and NMSA 1978, § 37–1–4 (1880), respectively. On appeal Turner argues that: (1) the trial court was precluded from deciding this issue because it was not properly before the court; (2) the trial court applied the wrong statute of limitations to his negligent misrepresentation claims; and (3) neither claim was barred, under any statute of limitation, because he did not discover the alleged negligent misrepresentation and conversion until 1998, a year before filing this action. The Bassetts argue, and we agree, that Turner failed to preserve these arguments.

{31} We first address Turner's contention that the statute of limitations issue was not properly before the court. Although the Bassetts raised a general affirmative defense that Turner's action was barred by the statute of limitations in their answer, Turner is correct in his assertion that the specific argument that his claims for negligent misrepresentation and conversion were barred by Sections 37–1–8 and 37–1–4, was not raised until the Bassetts filed their Reply Brief with the trial court, and then only in a footnote.

■ {32} Normally, a claim raised for the first time in a reply brief is considered untimely. *Taylor v. United Mgmt., Inc.,* 51 F.Supp.2d 1212, 1215 n. 2 (D.N.M.1999). If a party raises an issue for the first time in a reply brief, the party cannot complain if the court refuses to consider it. *See Santistevan v. Centinel Bank,* 96 N.M. 734, 737, 634 P.2d 1286, 1289 (Ct.App.1980) (refusing to consider argument made for the first time in the appellant's reply brief on appeal), *rev'd in part on other grounds,* 96 N.M. 730, 634 P.2d 1282 (1981). However, when issues are tried by express or implied consent of the parties, they may be treated in all respects as if they had been raised in the pleadings. Rule 1–015(B) NMRA 2003; *Cisneros v. Molycorp, Inc.,* 107 N.M. 788, 794, 765 P.2d 761, 767 (Ct.App.1988). When a party does not object to the trial court's consideration of an issue not raised in the pleadings and the court rules on that issue, the issue has been tried by the consent of the parties. *Id.* at 794, 765 P.2d at 767. This issue was argued by the Bassetts at the hearing on the motion for summary judgment and ruled on by the trial court, without any objection by Turner. We hold that the issue was tried by the implicit consent of the parties and was properly before the court. *See Barnett v. Cal M, Inc.,* 79 N.M. 553, 555–56, 445 P.2d 974, 976–77 (1968) (noting that inasmuch as a hearing was held and all counsel were present and participated without objection, any lack of notice of the hearing was not prejudicial).

■ {33} Having determined that the issue was properly before the trial court, we must now determine whether Turner preserved the arguments he now raises on appeal. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.,* 1997–NMCA–025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (concluding that normal

rules of preservation of error apply to appeals from summary judgments). "[W]e review the case litigated below, not the case that is fleshed out for the first time on appeal." *Id.* (internal quotation marks and citation omitted). We have reviewed the transcript of the hearing and can find no objection by Turner to the trial court's application of Sections 37–1–8 and 37–1–4 to bar his negligent misrepresentation and conversion claims. At no point in the hearing did Turner raise the arguments he now raises on appeal. Nor did he raise these arguments in his motion for reconsideration of the trial court's order granting summary judgment. In order to preserve an issue for review the party must not only make an objection below, but that objection must be "sufficiently timely and specific to apprise the trial court of the nature of the claimed error and to invoke an intelligent ruling by the court." *State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986). The preservation rule serves to alert the trial judge to a claim of error and give the judge an opportunity to correct any mistake, as well as to give the opposing party a fair opportunity to meet the case presented by the objector and show why the court should rule against the objector and in the opposing party's favor. *Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995).

{34} Because the trial court did not have a reasonable opportunity to consider the merits of, or to rule intelligently on, the arguments Turner now puts before us, Turner failed to preserve these arguments for our review. *Id.; see also Irvine v. St. Joseph Hosp., Inc.,* 102 N.M. 572, 574, 698 P.2d 442, 444 (Ct.App.1984) (stating that where party did not raise specific argument as to why statute of limitations should not be applied to bar his claim, such a claim could not be raised for the first time on appeal). Accordingly, we affirm the dismissal of Turner's negligent misrepresentation and conversion claims.

## CONCLUSION

{35} We reverse and remand for trial on the merits of Turner's quiet title claims as well as his remaining claims for restitution and declaratory judgment subject to the Bassetts' defenses. We affirm the trial court's dismissal of Turner's claims for negligent misrepresentation and conversion.

{36} **IT IS SO ORDERED.**

PICKARD and FRY, JJ., concur.