**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMCA-073

Filing Date: June 25, 2010

Docket No. 29,599

RAMONA SALCIDO POLACO, a/k/a
ROMONA SALCIDO POLACO, and
TRANCITO POLACO, her husband,

    Plaintiffs-Appellees,

v.

CORNELIA SALCIDO PRUDENCIO and
RAYMOND PRUDENCIO, her husband,

    Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY
Karen L. Parsons, District Judge

Gary C. Mitchell, L.L.C.
Gary C. Mitchell
Ruidoso, NM

for Appellees

Adam D. Rafkin, P.C.
Adam D. Rafkin
Ruidoso, NM

for Appellants

## OPINION

**FRY, Chief Judge.**

**{1}** This appeal requires us to determine whether the suit brought by Plaintiff Ramona Salcido Polaco against Defendant Cornelia Salcido Prudencio to resolve a boundary dispute between them was barred by any statute of limitations. Polaco filed suit in 1998, approximately ten years after she first discovered that there was a dispute over the boundary

1

line between her property and Prudencio's, but only two years after Prudencio completed construction of a fence along that disputed boundary line. The district court concluded that due to the ongoing nature of the conflict between the parties, the cause of action was not barred by any statute of limitations and resolved the boundary dispute in favor of Polaco, ordering Prudencio to remove the fence she had built along the disputed line. Prudencio appeals only the district court's conclusion that Polaco's complaint was not time-barred. We affirm.

**BACKGROUND**

{2}    The facts of this case are not in dispute. Sometime prior to 1981, Pedro Salcido, the father of Prudencio and Polaco, decided to divide his land into three parcels and give a parcel to each of his three daughters.[1] In 1981, after drawing out the boundary lines of his property and dividing the property into three parcels on paper, Salcido, along with Prudencio's and Polaco's husbands, built a fence along the boundary between the two sisters' property. In 1983, the parties hired a surveyor to draft deeds stating the legal description of their respective parcels. The surveyor prepared deeds based on his survey of the property and later realized he had made an error in the deeds. Rather than issue new deeds to correct the error, the surveyor had the parties exchange deeds to portions of their parcels in order to correct the mistake.

{3}    In May 1988, Salcido died. In the summer of 1988, shortly after Salcido's death, Polaco discovered that Prudencio was beginning to take down the fence Salcido had built and that Prudencio was beginning to construct a new fence that extended the boundary line further into Polaco's parcel of land. Following this discovery, Polaco went to the county clerk's office and determined that the deeds prepared by the surveyor had changed the boundary line between the two properties. Polaco complained to Prudencio about the construction, and Prudencio stopped building the fence. Over the course of the next ten years, Prudencio periodically resumed construction of the fence, Polaco complained, and Prudencio stopped construction. This happened approximately four times before the completion of the fence in 1996. In 1996, Prudencio closed a gate blocking Polaco's access to the property.

{4}    On June 5, 1998, Polaco filed suit against Prudencio to establish the boundary lines and to permanently enjoin Prudencio's use of the land originally given to Polaco via the construction of the 1981 boundary fence. Prudencio moved for summary judgment, arguing that Polaco's claims were barred by the four-year "catch-all" statute of limitations. In February 2000 the court heard testimony and ordered the parties to have an independent surveyor review the plats, diagrams, and legal descriptions of the property. In 2009 after a number of continuances and delays, the court ultimately ruled that the statute of limitations

---

[1] Salcido's third daughter is not a party to this litigation because the dispute concerns the boundary line between Prudencio and Polaco.

did not bar Polaco's complaint and that the boundary line between the two properties was the line on which Salcido had built the fence in 1981.

**{5}** In concluding that Polaco's claims were not barred by any statute of limitations, the district court found that the "dispute over the property boundaries . . . [was] a continuing dispute and [that] the statute of limitations should[ not] apply." The court explained that "a conflict would arise and the building would stop" but that "sometime later additional fence would be built, and the conflict would arise again and the fence building would stop." Because the court found that the conflict continued "until sometime between 1996 and 1998," and because the lawsuit was filed "within the same year or two of the continuing conflict," the court concluded that "[Polaco] timely filed [her] complaint and it should not be barred by the statute of limitations." The court did not indicate which statute of limitations it was applying, only that the one- to two-year delay between the conclusion of the fence's construction and the filing of the complaint was within the statute of limitations.

**{6}** On appeal, Prudencio argues that there is no codified statute of limitations for boundary disputes, that we should apply the four year "catch-all" statute of limitations to Polaco's cause of action, and that the cause of action accrued in 1988 when Polaco first discovered that there was a dispute over the boundary line. Specifically, Prudencio contends that the court erred in concluding that the statute of limitations was tolled by the ongoing nature of the conflict between the two parties, arguing that the "continuing wrong doctrine" is inapplicable to Polaco's cause of action. Because the district court did not indicate which statute of limitations it was applying to Polaco's claims, we first address the applicable statute of limitations. Where, as here, the "facts relevant to a statute of limitations are undisputed, the standard of review is whether the court correctly applied the law to the undisputed facts." *Gilmore v. Gilmore*, 2010-NMCA-013, ¶ 13, 147 N.M. 625, 227 P.3d 115 (filed 2009). This presents a question of law that we review de novo. *Id.*

**Boundary Disputes Are Governed by the Ten-year Period Applicable to Adverse Possession**

**{7}** The title of Polaco's complaint stated that she was seeking to establish boundaries and fence lines and for permanent injunction. She alleged that her land was bordered by a fence that was built in 1981 by her father, her husband, and Prudencio's husband and that she took possession of the land sometime after the fence was completed. She also alleged that Prudencio "ha[s] now attempted and in the past few years, ha[s] built and put into use a new fence, taking a large portion of [Polaco's] land." While the specific relief that Polaco sought—a determination of the correct boundary between the parties' parcels—was clear from the complaint, the type of action she brought, and thus the applicable statute of limitations, is not entirely clear.

**{8}** Both parties construe the cause of action as a boundary dispute. Our Supreme Court has recognized that "[e]jectment is the remedy ordinarily invoked in the settlement of such disputes." *Murray Hotel Co. v. Golding*, 54 N.M. 149, 156, 216 P.2d 364, 368 (1950). In

3

order to bring an action for ejectment, it is sufficient that a plaintiff "declare in his complaint that on some day, named therein, he was entitled to the possession of the premises, describing them; and that the defendant, on a day named in the complaint, afterwards entered into such premises and unlawfully withheld from the plaintiff the possession thereof." NMSA 1978, § 42-4-5 (1907). Polaco's complaint alleged that she possessed and was entitled to possess property on one side of the fence that was built by her father and that Prudencio took possession of that property by building a fence that encroached on her property and therefore withheld from Polaco possession of the land. Thus, Polaco's complaint stated a cause of action for ejectment, and we therefore consider the applicable statute of limitations for an ejectment action. Nonetheless, we note that "a statutory suit to quiet title would also have been appropriate" because quiet title actions are "used to determine any interest in land whether [the] plaintiff is in or out of possession." *Cunningham v. Otero County Elec. Coop., Inc.*, 114 N.M. 739, 742, 845 P.2d 833, 836 (Ct. App. 1992) (internal quotation marks and citation omitted).

**{9}**     Prudencio argues that "[t]here is no statute of limitations in New Mexico which would grant Plaintiffs ten (10) years to file suit in this matter" and that because "there appears to be no explicit, codified statute of limitations for boundary disputes," the four-year statute of limitations for unspecified actions is applicable. Prudencio correctly notes that there is no express statute of limitations for an ejectment action in NMSA 1978, Sections 37-1-1 to -17 (1880, as amended through 2009), the statutory chapter delineating the statute of limitations for various causes of action. Prudencio also correctly recognizes that Section 37-1-4 provides a four-year statute of limitations for "all other actions not herein otherwise provided for and specified." We disagree, however, with Prudencio's contention that a boundary dispute action falls within the four-year catch-all statute of limitations.

**{10}**     Our Supreme Court has previously held that equitable actions regarding title to property are not cut off by the running of statutes of limitations. In *Garcia v. Garcia*, 111 N.M. 581, 808 P.2d 31 (1991), the Court addressed whether a six-year statute of limitations for actions founded in contract applied to a quiet title action. In holding that the statute of limitations was inapplicable, the Court noted that "[u]nless the equitable owner's claim is barred by [the adverse possession statute,] a contract vendee's claim of title, where the vendee has fully performed and whether or not he or she is in possession, is not cut off by the running of a statute of limitations." *Id.* at 588, 808 P.2d at 38. Thus, the Court recognized that an equitable claim to title of property, such as a quiet title or ejectment action, is not affected by the running of a statute of limitations but only by the ten-year adverse possession statute. *See id.*; *see also Turner v. Bassett*, 2003-NMCA-136, ¶ 20, 134 N.M. 621, 81 P.3d 564 (noting that "there is no statute of limitations applicable to actions to quiet title"), *rev'd on other grounds by*, 2005-NMSC-009, 137 N.M. 381, 111 P.3d 701.

**{11}**     Our adverse possession statute provides that "any person . . . who shall neglect or have neglected for the said term of ten years, to avail themselves of the benefit of any title, legal or equitable, which he, she or they may have to any lands [held by] the person or persons so as aforesaid in adverse possession, shall be forever barred" from asserting title

4

to the land. NMSA 1978, § 37-1-22 (1973). Thus, causes of action brought more than ten years after a defendant begins to adversely possess land are barred by Section 37-1-22. It follows that a plaintiff can file suit to resolve a title dispute at any time prior to the running of the ten-year period.

**{12}** We find support for this view in our case law on the adverse possession statute. For example, in *Jinkins v. City of Jal*, our Supreme Court noted that the period for a prescriptive easement is identical to the period for adverse possession, ten years. 73 N.M. 173, 177, 386 P.2d 599, 602 (1963). Thus, the "period during which one must sue to enforce an easement is ten years." *Id.* The Court explained that "in a suit to enjoin a restrictive covenant or negative easement . . . the applicable period of limitation is the period of prescription." *Id.* Similarly, in *New Mexico Products Co. v. New Mexico Power Co.*, the Court noted that the adverse possession statute granted a ten-year period for an action stemming from the obstruction of a stream. 42 N.M. 311, 321, 77 P.2d 634, 641 (1937).

**{13}** In light of this authority, Prudencio's argument that a cause of action to resolve a boundary dispute is barred by the four-year catch-all statute of limitations does not make sense. It is illogical to conclude that the Legislature intended that a property owner has ten years in which to refute a claim of adverse possession, but only four years in which to seek ejectment of a party withholding possession from the property owner. We therefore reject Prudencio's contention and hold that the ten-year period imposed by the adverse possession statute is applicable to Polaco's claim. Even then, Polaco's claim would be barred only if Prudencio met all other requirements of the adverse possession statute. *See Garcia*, 111 N.M. at 588, 808 P.2d at 38. However, we clarify that the doctrine of laches may serve as a bar to stale claims involving the title to property. *Id.* (noting that while statutes of limitations do not run against claims to quiet title, the doctrine of laches could still serve to bar stale claims regarding title). Prudencio does not argue the defense of laches in this case.

**Polaco's Complaint Was Timely Filed and Is Not Time-Barred**

**{14}** We next address whether the ten-year period under Section 37-1-22 had run when Polaco filed suit on June 5, 1998. According to the testimony of Polaco's husband, they discovered that Prudencio was beginning to construct a fence sometime in the summer of 1988. Depending on whether that discovery was before or after June 5, 1988, Polaco either filed her complaint within ten years of discovering the dispute over the boundary or she filed outside of that ten-year period. While such a factual question would ordinarily require a remand to the district court to determine the precise date that Polaco discovered the construction of the fence, a remand is unnecessary because there is no assertion that Prudencio actually took possession of the disputed property in 1988, only that Polaco became aware that Prudencio asserted ownership of the disputed tract.

**{15}** Section 37-1-22 requires that in order for a person to obtain title to property through adverse possession, the person must "have had adverse possession continuously and in good faith under color of title for ten years." That possession must be "actual, visible, exclusive,

5

hostile and continuous." *Bd. of Trs. of Tecolote Land Grant v. Griego*, 2005-NMCA-007, ¶ 9, 136 N.M. 688, 104 P.3d 554 (filed 2004). Thus, possession is an essential element that must be met before the ten-year adverse possession period will begin to run. The district court found that "over a period of years," Prudencio "started the fence, built a portion, then stopped, and then rebuilt the fence and then started again" until the fence was completed sometime around 1996. Because of the sporadic nature of the construction of the fence, Prudencio cannot be said to have had exclusive and continuous possession of the disputed property for the requisite ten-year period at the time that Polaco filed her suit in 1998. *See Lopez v. Adams*, 116 N.M. 757, 759, 867 P.2d 427, 429 (Ct. App. 1993) (concluding that evidence that property was used by another party precluded the exclusive, uninterrupted possession required for adverse possession); *Gentile v. Kennedy*, 8 N.M. 347, 354, 45 P. 879, 880 (1896) (noting that a true owner's "possession must be presumed to continue until its loss by ouster has been proved" and that there must be "an actual occupancy" that is "clear, definite, positive, and notorious"). By abandoning the construction of the fence each time Polaco complained about the intrusion onto her property, Prudencio failed to maintain the continuous and exclusive possession of the disputed property that would allow the ten-year period to begin to run. Thus, at the time that Polaco filed suit, the ten-year period had not expired, if it had ever even begun to run, and Polaco's cause of action was therefore timely filed.

**{16}** Because we conclude that Polaco's cause of action was timely filed, we do not address Prudencio's argument that the district court erred in concluding that the statute of limitations was tolled by the continuing conflict in the case. In addition, in her reply brief, Prudencio argues that Polaco never asserted claims for adverse possession or defect in title and that Polaco cannot raise these issues for the first time on appeal. Contrary to Prudencio's argument, however, Polaco does not assert on appeal that her claim is one for adverse possession or defect in title. Rather, in response to Prudencio's argument that the four-year catch-all statute of limitations applies to a boundary dispute, Polaco asserted that the ten-year period in the adverse possession statute is the applicable time frame for a boundary dispute. In order for this Court to address Prudencio's argument on appeal, we necessarily had to consider what limitations period actually applies to such a dispute.

**CONCLUSION**

**{17}** For the foregoing reasons, we affirm the judgment of the district court.

**{18}** **IT IS SO ORDERED.**

---

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

6

_____

**MICHAEL E. VIGIL, Judge**


_____

**LINDA M. VANZI, Judge**


**Topic Index for** *Polaco v. Prudencio***, Docket No. 29,599**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-EQ | Equitable Claims or Defenses |
| CP-SL | Statute of Limitations |
| | |
| **PR** | **PROPERTY** |
| PR-AD | Adverse Possession |
| PR-BN | Boundaries |
| PR-FP | Fences and Party Walls |
| PR-PA | Partition |
| PR-QT | Quiet Title |
| PR-RW | Right of Way |
| PR-TS | Trespass |
| | |
| **RE** | **REMEDIES** |
| RE-EQ | Equity |