760 P.2d 1290

**SUN VINEYARDS, INC., a New Mexico corporation, Plaintiff–Appellee,**

v.

**LUNA COUNTY WINE DEVELOPMENT CORPORATION, Atanas Tontchev and Swiss Wine Growers Association, Inc., Defendants–Appellants.**

No. 17380.

Supreme Court of New Mexico.

Sept. 13, 1988.

J. Wayne Woodbury, Silver City, for defendants-appellants.

Campbell, Reeves & Chavez, P.A., William A. Walker, Jr., Las Cruces, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

This suit to quiet title to water rights and for breach of contract arose out of the sale of a vineyard near Deming, New Mexico. On August 31, 1984, Luna County Wine Development Corporation (Wine Development) conveyed by warranty deed to Pascal Moulin, Sun Vineyards' predecessor in interest and president, 84.48 acres "with water rights." Of the 84.48 acres, 76.61 were irrigated vineyard.

By early 1983, Wine Development had acquired in Luna County approximately 720 acres of land which included 467.1 acres with block or flood irrigation rights of three acre-feet per acre per year from the Mimbres Underground Water Basin. The land and water rights covered by the contract between the parties to this action were part of this 720 acre tract.

In January of 1984, Wine Development had filed with the New Mexico State Engineer an Application for Permit to Change Place or Purpose of Use of Underground Waters and Combine Wells. The State Engineer, by approving the application, permitted spreading of the water rights over the 720 acre tract, resulting in a duty of water less than three acre-feet per acre per year to the extent more than 467.1 acres were put to beneficial use. No one has questioned the State Engineer's salutary approval of this spreading, whereby appurtenant water rights were to be apportioned by meter to immediately adjacent lands of the owner. Spreading is made possible by and encourages water-saving practices. *Cf. Salt River Valley Users' Ass'n v. Kovacovich*, 3 Ariz.App. 28, 411 P.2d 201 (1966) (absent application for additional water rights, valid appurtenant water rights

may not through water-saving practices be apportioned to immediately adjacent lands of the owner).

In 1986, a dispute arose between Sun Vineyards and Wine Development (as well as Antanas Tontchev and Swiss Wine Growers, successors in interest to Wine Development) regarding the water rights to which Sun Vineyards was entitled under its contract of purchase. Sun Vineyards contended the deed "with water rights" entitled it to water rights with an overall farm duty of three acre-feet per acre per year for the irrigated lands, whereas Wine Development contended that the only water rights appurtenant to the land at the time of execution of the contract consisted of an overall farm duty of 1.636 acre-feet per acre per year.[1] The district court ruled in favor of Sun Vineyards, ordered the transfer of water rights of three acre-feet per acre per year to cover the acreage in irrigation on the 84.48 acre tract sold to Sun Vineyards, and awarded $30,000 in damages for Wine Development's breach of contract. We affirm.

On appeal, Wine Development raises the following issues: (1) whether, given the language of the application approved by the State Engineer, the historic water rights of three acre-feet per acre per year using block or flood irrigation were, after January 1984, no longer appurtenant to irrigated acreage within the 720 acre tract, or whether final proof of beneficial use and the survey thereof were required to be filed before water rights were severed and made appurtenant to other specified acreage; (2) whether Wine Development intended to transfer and Sun Vineyards intended to buy a vineyard with three acre-feet per acre per year; and (3) whether the award of damages was proper.

The trial court found the Application for Permit stated the land was to be strip or point irrigated utilizing hill or furrow borders and drip or trickle irrigation systems to irrigate vineyard hedgerows, windbreak hedgerows and aesthetic trees, scrubs, flowers, and the like. According to the application, the strips irrigated were to be "at least 6′ but not more than 8′ in width for the most part." Wine Development's position seems to be that the duty for a drip irrigation system cannot exceed the amount which was permitted by the approval of the application. Therefore, Wine Development argues, the only water rights which would ever become appurtenant to Sun Vineyard's acreage must have a duty of 1.636 acre feet per acre per year. (See footnote 1.)

Wine Development contends there is no evidence to support the court's finding that water rights transferred or moved under a permit become appurtenant only when final proofs and surveys are filed. Wine Development grounds its argument on the absence of any reference to "final proofs and surveys" in statutory water law that provides all waters appropriated for irrigation purposes shall be appurtenant to specified lands so long as beneficially used or *until severed and simultaneously made appurtenant to other land.* NMSA 1978, §§ 72–1–2 and 72–5–23 (Repl.Pamp.1985). *See State ex rel. Reynolds v. Holguin,* 95 N.M. 15, 618 P.2d 359 (1980) (all water rights are appurtenant to specific acreage). A review of the record, however, indicates that testimony was presented in support of the trial court's finding and its compatibility with the statutory language. *See Cave v. Cave,* 81 N.M. 797, 474 P.2d 480 (1970) (appellate court will not disturb trial court findings which are supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

 While the supervisor of the State Engineer's Deming office testified in gen-

---

1. The planting of grapevines on eleven foot centers with a hedgerow drip system at the base of each vine results in strips of irrigated land three feet to each side of center (⁶⁄₁₁ths) alternating with strips of unirrigated land five feet across (⁵⁄₁₁ths). While the irrigated portion receives the historic amount under the three acre-feet per acre per year formula, the overall farm duty is computed by Wine Development by multiplying ⁶⁄₁₁ths (wetted area) × 3 (duty permitted for wetted area) = 1.636.

eral that once an application is filed and approved the water rights are severed from the old location and become appurtenant to the new location, he explained that the transfer is not vested until several conditions are met. *See City of Roswell v. Berry,* 80 N.M. 110, 452 P.2d 179 (1969) (state engineer has authority to approve application subject to conditions precedent). Clearly, water has to be put to beneficial use, at which time the filing of a survey is required to demonstrate that fact. *See* State Engineer of New Mexico, *Rules and Regulations,* Article 2–10 (January 15, 1986) (lands to which water rights are transferred must be surveyed and maps prepared and included in the final inspection and report). The supervisor further testified that a field check and review of the plat would be made before the district office recommended final approval to the State Engineer in Santa Fe who, in turn, would issue a certificate and license. *See* State Engineer of New Mexico, *Rules and Regulations,* Articles 2–2 and 2–11 (January 15, 1986) (approval by State Engineer granted only after proper application is made and license shall be issued when all required documents have been filed). The testimony indicated that after successful completion of the above procedure, the water right transfer becomes vested. We find that this evidence substantially supports the district court's finding, and, as such, it is affirmed. The transfer vested only upon the filing of final proofs and surveys.

■ The trial court's finding is compatible with constitutional and statutory language. The New Mexico Constitution provides that "Beneficial use shall be the basis, the measure and the limit of the right to the use of water." N.M.Const. art. XVI, § 3. This proposition also appears in NMSA 1978, Sections 72–12–2 and 72–12–4 (Repl.Pamp.1985). The former tracks the constitutional language of Article XVI, Section 3 and the latter recognizes that water rights are based upon application to beneficial use. In *State v. Mendenhall,* 68 N.M.

467, 362 P.2d 998 (1961), referring to Section 72–12–4 (formerly NMSA 1953, Section 75–11–4), the court stated:

> We are clear that when the legislature used the term "based upon" it had in mind the entire procedure necessary to accomplish a beneficial use of water. It is ofttimes a long drawn out enterprise that must be accomplished between initiation of a right and a final act of irrigating a quantity of land.

*Id.* at 473, 362 P.2d at 1002. From *Mendenhall* we recognize that, whereas approval of the application would have permitted the owner to undertake spreading, the transfer would not vest until the spreading ripened into valid rights through beneficial use as documented by final proofs and surveys. Only then would a certificate and license issue. Here, Wine Development did not reserve the right to continue the procedure necessary to accomplish a beneficial spreading of water rights from the 84.48 acres. Conveyance of the 84.48 acres without reservation resulted in the discontinuation of a procedure which could have reduced existing water rights through their proportionate transfer to adjacent land. Through reasonable diligence, the transfer may have vested had the procedure not been discontinued. It is the act of putting the water to beneficial use, not the intent to do so, that is the measure and the limit to the vesting of the transfer. In other words, once Wine Development sold the land, without reservation of rights, the procedure necessary to accomplish a beneficial use of water through spreading was interrupted and a proportionate transfer from the conveyed land was prevented from vesting.

■ In its second issue, Wine Development claims that because the contract terms "with water rights" was clear and unambiguous the district court erred in admitting parol evidence to determine its meaning. However, appellant fails to direct our attention to specific evidence or objection to its introduction. The nature of claimed error must be specifically stated

and argued; a generalized attack is not enough. *Perez v. Gallegos*, 87 N.M. 161, 530 P.2d 1155 (1974). The gist of the argument made by Wine Development is that "with water rights" means "with appurtenant water rights." We agree. However, contrary to the position of Wine Development that the appurtenant water rights were 1.636 acre-feet, we have affirmed that they were 3 acre-feet. In applying the contract language, the usual and customary meaning was given to the language used. *See Crownover v. National Farmers Union Property & Casualty Co.*, 100 N.M. 568, 572, 673 P.2d 1301, 1305 (1983) (citing *Clear v. Patterson*, 80 N.M. 654, 459 P.2d 358 (Ct.App.1969)). As to what water rights were appurtenant at the time of conveyance, the evidence did not bear upon construction or interpretation of the words "with water rights," but rather upon the application of those words.

■ In light of the above, we hold that the district court correctly found that Sun Vineyards' predecessor in interest entered into the contract to purchase the land in reliance that Wine Development was selling the land with full appurtenant water rights. Also correct is the court's conclusion that Sun Vineyards and its predecessor had no knowledge prior to the purchase of the property that the water rights would be less than normal. Mr. Moulin testified that the matter of water rights did not arise during negotiations and was not a cause for concern until it was discovered that the usual and customary amount of water rights had not been transferred to Sun Vineyards. We affirm the court's conclusion that the contract transferred 84.48 acres with water rights normally associated with irrigated land in the Deming area amounting to three acre-feet per acre per year using flood or block irrigation for the 76.61 acres of irrigated vineyard.

■ Regarding the issue of damages, Wine Development claims the court erred in basing its award upon plaintiff's Exhibit C which Wine Development contends was admitted in violation of the hearsay rule of evidence. The exhibit was a contract between Mr. Moulin and Mr. DeJoie who agreed to loan Moulin $230,000.00 which would be converted into a capital acquisition of stock upon fulfillment by Moulin of certain conditions having to do with the water rights. The record indicates tht the document was admitted under SCRA 1986, 11–803(F), the business record exception to the hearsay rule. Wine Development argues only that there was an insufficient showing that the document was a business record as contemplated by Rule 11–803(F). The relevance and materiality of the document is not questioned. The document was the best evidence of its contents, and the document was authenticated by witness Moulin, himself a signatory thereto. It was properly admitted notwithstanding the misplaced emphasis and argument concerning the business record exception. *See Jesko v. Stauffer Chem. Co.*, 89 N.M. 786, 558 P.2d 55 (Ct.App.1976) (testimony having been properly admitted, the fact that it may have been admitted on an erroneous basis does not aid appellant).

Based upon the foregoing, the district court's decision to order specific performance of the contract, to quiet title to the water rights of three acre-feet per acre per year appurtenant to the subject property, and to award $30,000 in damages is hereby affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.