# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  August 22, 2016 

**NO. 34,588**

**DAVID CHRISTOPHER and JULIA M. CHRISTOPHER,**
**husband and wife,**

Plaintiffs/Counter-Defendants-Appellees,

**v.**

**KENNETH H. OWENS,**

Defendant/Cross-Defendant-Appellee,

**and**

**SONORA CORPORATION, a New Mexico Corporation,**

Defendant/Counterclaimant/Cross-Claimant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hennighausen & Olsen, L.L.P.
A. J. Olsen
Alvin F. Jones
Olivia R. Mitchell
Roswell, NM

for Appellees David & Julia M. Christopher

Sanders, Bruin, Coll & Worley, P.A.
Kelly Mack Cassels
Roswell, NM

for Appellee Kenneth H. Owens

J. Robert Beauvais, P.A.
J. Robert Beauvais
Ruidoso, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

{1}     This case—which may turn out to be much ado about nothing—presents an object lesson in how not to structure the purchase and sale of water interests in New Mexico. The district court ruled that Appellee Kenneth Owens did not—indeed, could not—reserve any cognizable water interest when he sold a ranch to Appellees David and Julia Christopher (Christophers). The district court also held that Owens did not provide any actionable warranty covenants when he deeded his interest to Appellant Sonora Corporation. Only Sonora appeals. We reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2}     The historical facts giving rise to this case are simple and undisputed. In 1998 Owens sold his "High Nogal Ranch" to the Christophers by warranty deed. The ranch included a water source commonly known as the Maxwell Springs. Owens was apparently initially reluctant to include the land surrounding the Maxwell Springs in the sale, but eventually agreed to include the property in exchange for an additional $100,000 over the sale price and an agreement that he could retain an interest in the water produced from it. The warranty deed conveying the real estate includes the following language:

Reserving, however, a right of way over the existing roads from Highway 54 to the Apache Ranch.

Together with a full three[-]inch pipe line of water from Maxwell Springs to the High Nogal Ranch house through the existing three[-]inch pipe line. Water flow will be 24 hours a day 7 days a week. The balance of water produced from Maxwell Springs now existing or as developed in the future will be owned [fifty percent] each by David Christopher and Kenneth H. Owens.

{3}     Owens then sold his fifty percent interest to Appellant Sonora in 2002 using a New Mexico form real estate contract. The real estate being conveyed was described as follows:

> All the Grantor's right, title and interest in and to the reservation to him of water and rights thereto from the Maxwell Springs located on the High Nogal Ranch contained in that certain [w]arranty [d]eed dated May 8, 1998[,] and filed for record on May 15, 1998[,] in Book 889 at Page 43 of the records of Otero County, New Mexico, by and between the Grantor and David Christopher and Julia M. Christopher, his wife, as Grantees. The division of water from said Maxwell Springs is stated therein as follows:
>
> "Together with a full three[-]inch pipe line of water from Maxwell Springs to the High Nogal Ranch House through the existing three[-]inch pipe line. Water [f]low will be 24 hours a day 7 days a week. The [b]alance of water produced from Maxwell Springs now existing or as developed in the future will be owned [fifty percent] each by David Christopher and Kenneth H. Owens."
>
> This conveyance is intended to not impair any rights granted to the Christophers, but includes all right, title and interest in said water from the Maxwell Springs retained by Kenneth H. Owens in said warranty deed.

The warranty deed accompanying the real estate contract repeated this legal description and, in accord with the statutory deed form, concluded "with warranty covenants." For reasons not important to our analysis, the real estate contract was later converted to a note and mortgage. As a result of the conversion, the deed was recorded in February 2009.

{4}     The difficulties between the parties arose from their efforts to develop and market water from the Maxwell Springs. In January 2003 the Christophers filed an "Application for Permit to Appropriate" water from the Maxwell Springs with the New Mexico State Engineer. The record does not reveal what the current status of the application is, but it is not disputed that the City of Alamogordo (the City) filed an objection to the Christophers' application with the State Engineer. In January 2007 the Christophers and the City settled their differences by entering into an agreement whereby they would not interfere with each other's attempts to establish water appropriation rights. In addition, the City agreed to purchase "up to the permitted amount of Maxwell Spring[s] water" subject to certain conditions. The record does not reveal whether the Christophers have received a permit or whether this agreement has been put to actual effect as yet.

{5}     On or about July 2, 2007, Owens filed his own "Application for Permit to Appropriate" water from the Maxwell Springs. Given that Owens had sold his interest

in the Maxwell Springs water to Sonora some five years earlier, it is not clear why Owens filed the application. The record below provides no clarity on the matter. In any event, Owens' application and the recording of the Owens/Sonora warranty deed apparently prompted the filing of this action.

{6} In March 2009 the Christophers filed a complaint naming only Owens as a defendant. Within three weeks they filed an amended complaint naming Sonora as an additional defendant. The substantive allegations of the complaints are the same. The complaints sought a declaration that Owens did not own an interest in the water from the Maxwell Springs and that his attempt to reserve an interest in the water was a legal nullity. The complaints also asserted that since Owens owned no legally cognizable interest in the waters of the Maxwell Springs, he had conveyed nothing to Sonora. And, thus Sonora had no basis on which it could seek to appropriate water from the Maxwell Springs either. The complaints also asserted claims of slander of title, civil conspiracy, and tortious interference with the contractual relations between the Christophers and the City.

{7} Initially represented by the same counsel, Owens and Sonora filed a joint answer, including a counterclaim for declaratory judgment in their favor as to the legal "effect of the reservation contained in the Owens-Christopher deed."

{8} After an initial discovery period, the parties filed motions for summary judgment. Relying on general water law principles, the Christophers argued that Owens never had a recognized water right in the Maxwell Springs water because he did not do anything required by New Mexico law while he owned the ranch to have such a right acknowledged and approved by the State Engineer. The Christophers also argued that he could not legally reserve any interest in the Maxwell Springs water because of the inherently speculative nature of such an interest. And, the Christophers argued, Owens' simple ownership of the land over the Maxwell Springs did not by itself create an ownership interest in the water located beneath the land. *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 17, 143 N.M. 142, 173 P.3d 749 (noting that "a water right is not an automatic stick in the bundle of rights a landowner receives upon purchasing even a fee interest in land" (internal quotation marks and citation omitted)).

{9} Still represented at the time by the same attorney, Owens' and Sonora's motion for summary judgment took an entirely different tack. Their argument was that the Owens/Christophers deed created a "joint relationship in which they would each own an undivided [fifty percent] interest in the present or future water to be derived from Maxwell Spring[s]." Carrying the thought further, Owens and Sonora argued that through the deed to the Christophers, Owens and the Christophers "agreed to become

5

joint developers as to the excess water derived and to be derived from Maxwell Spring[s]." Owens and Sonora thus attempted to frame the issue as a matter of contract between the parties.

{10} The district court heard arguments on the two motions at the same time. Over two years later the district court entered a "Minute Order" granting the Christophers' motion and declaring that Owens and Sonora "have no rights to any water rights arising out of the Maxwell Springs." The district court also denied Owens' and Sonora's motion for summary judgment. The district court certified its order for interlocutory appeal, but this Court refused to accept the appeal.

{11} At this point the parties' tactics changed. The attorney who had represented both Owens and Sonora withdrew from the case and was replaced by separate counsel for the two defendants. Sonora promptly sought leave to supplement its answer and add a cross-claim against Owens. The cross-claim asserted that Owens was in breach of his warranty obligations under the Owens/Sonora deed to properly convey title and to defend the title conveyed.

{12} As before, this phase of the litigation was conducted by way of competing motions for summary judgment. Sonora filed its motion first, relying on the district court's ruling that Owens had no ownership in the Maxwell Springs to argue that Owens necessarily breached the warranty covenants of the deed as defined in NMSA

6

1978, Section 47-1-37 (1947). Owens filed a lengthy response, arguing that the warranty covenant was of no effect given the manner in which the property being conveyed was described in the deed. Sonora filed a second motion for summary judgment against Owens arguing a breach of contract theory that relied on the real estate contract the parties entered into in 2002. Owens' response relied on the theory of merger to argue that the real estate contract was no longer in effect or even relevant to the transaction.

{13}     The district court agreed with Owens' arguments and dismissed Sonora's cross-claim in two orders—a "Minute Order" filed in December 2013 and a more formal judgment entered in March 2015.

{14}     Interestingly, in August 2014 Owens filed a disclaimer wherein he disclaimed "any interest in the water rights which are the subject of this action." And, as a matter of historical note, the Christophers sold the High Nogal Ranch in February 2007 reserving in themselves "water rights for commercial, domestic, municipal, industrial, and subdivision purposes from Maxwell Springs per Grantors' pending application No. SP-4896 on file with the Office of the New Mexico State Engineer."

**ANALYSIS**

{15}     The odd circumstances in this case present three issues: Did Owens reserve any cognizable interest in the water of the Maxwell Springs? If he did not, did he breach

any warranty covenants when his deed failed to convey to Sonora any interest in the waters of the Maxwell Springs? Did he breach any contractual obligations when the deed he delivered to Sonora failed to convey any interest in the Maxwell Springs? We deal with each issue in turn.

**A.      Owens Reserved an Interest in the Maxwell Springs Waters Rights**

{16}      We conclude that Owens did reserve a cognizable interest in the water of the Maxwell Springs that he could enforce as to his buyers, the Christophers. We also conclude that Owens could sell and assign his interest to Sonora.

{17}      Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Our review is de novo. *Id.*

{18}      Unlike most cases in which the parties argue about the existence of material questions of fact based on a plethora of evidence in the record, this matter is marked by the paucity of its record. For example, the deed conveying the High Nogal Ranch from Owens to the Christophers is the only document executed by them memorializing the sale. There are no affidavits in the record from the parties describing what they thought they were buying and selling. The Christophers' deposition testimony in the record does not reveal any questions and answers concerning what they thought the reservation language meant. Owens' deposition

testimony does include his view of what he owned in the Maxwell Springs. Owens asserted in his deposition that he had not sold water rights. Rather, in his view, he simply sold "half the spring[s]" as an asset that he owned as part of the ranch. He saw it as an asset that he could sell or not. Over coffee with David Christopher, Owens agreed to sell the land surrounding the Maxwell Springs if he could keep a fifty percent interest in the water that might be developed from it.

{19}    In short, the record is essentially devoid of evidence concerning the parties' construction of the deed. Given the state of the record we are left to "interpret the intention [of the parties] from the language of the instrument itself." *Atl. Ref. Co. v. Beach*, 1968-NMSC-003, ¶ 8, 78 N.M. 634, 436 P.2d 107. Thus, the inquiry as to the meaning and effect of the "reserving" language in the deed presents a question of law. Our review again is de novo. *Papatheofanis v. Allen*, 2009-NMCA-084, ¶ 8, 146 N.M. 840, 215 P.3d 778.

{20}    Interestingly, the parties do not agree on which body of law should be applied. The Christophers argue that New Mexico's statutory and regulatory water law regime overrides all other considerations, and under that law Owens did not own any water rights that he could convey or retain. From the Christophers' standpoint the only relevant undisputed facts are that Owens never did anything before he sold the ranch to perfect a water right as such. He never filed for a permit to appropriate water or a

9

declaration of ownership of water in connection with the Maxwell Springs with the State Engineer. In fact he had no dealings with the State Engineer while he owned the ranch. And he did not put the water from the Maxwell Springs to beneficial use for anything other than limited domestic use and whatever "irrigation" occurred naturally.

{21} Owens' and Sonora's position below relied on contract principles. They asserted that the deed reservation reflected an intent to create a joint effort in which the Christophers and Owens would work together to develop and market the waters of the Maxwell Springs. On appeal, Sonora argues that the deed was sufficient to reserve—as against the Christophers—one-half of the pre-1907 rights asserted by the Christophers in the Application for Permit to Appropriate they filed with the State Engineer.

{22} The district court apparently agreed with the Christophers' theory of the case, since it ruled that Owens and Sonora "have no rights to any water rights arising out of the Maxwell Springs." We disagree.

{23} We begin by reminding ourselves—and the parties—that the case does not involve a claim to "water rights" as against the world. Rather, the issue to resolve is what the Owens/Christophers deed means as between the parties to it. The concepts the Christophers rely on are thus largely irrelevant to this case because they are

10

designed to order the ownership and use of water in a larger public arena. Water is a public and scarce resource. Competing claims against it must be known, weighed, tested, and balanced. The competition for recognition of permitted, licensed, and recognized "water rights" in a scarce public good—with as early a priority date as possible—is what drives the need for the statutory and regulatory process Owens admits he never followed.

{24}    But the regulatory process of recognizing and prioritizing water rights is not applicable to the issues that may arise as between a buyer and seller and how they choose to structure a transaction between themselves.[1] The Christophers do not assert that they thought they were buying a recognized, licensed, and permitted water right. Owens does not assert that he was selling and reserving a recognized, licensed, and permitted water right. In fact, so far as the record here is concerned, there is still no recognized, licensed, and permitted water right founded on the Maxwell Springs. What, then, is the most likely interpretation of what the deed means? The parties

---

[1]We recognize that issues can arise with regard to the unintended conveyance of unsevered appurtenant water rights. *See Turner v. Bassett*, 2005-NMSC-009, ¶ 24, 137 N.M. 381, 111 P.3d 701 (recognizing a presumption that the issuance of a permit by the State Engineer allowing recognized irrigation water rights to be shifted to other users works as severance of those water rights from the land). No one here argues that there were any permitted, licensed, or recognized water rights appurtenant to the High Nogal Ranch when it was sold.

11

obviously thought they were buying, selling, and reserving something—with that something valued by them at $100,000.

{25}    It is a given that Owens did not own a recognized "water right" in the sense that term is normally used in New Mexico. He owned land that included water sources, specifically the Maxwell Springs. As the landowner he had the inchoate right to pursue the development, establishment, and perfection of water rights for the waters of the Maxwell Springs. The Christophers received no more than Owens had: a right to—or opportunity to—pursue the development, establishment, and perfection of water rights. They took advantage of that opportunity when they started their proceedings with the State Engineer.

{26}    We fail to see why the parties could not agree to split or share that inchoate right to pursue "water rights." To the contrary, we conclude that the parties could agree to split the opportunity as they saw fit and that agreement would be enforceable as between them. The interpretation of the deed that best fits the facts as we know them is that Owens conveyed the realty within which the Maxwell Springs lay, but kept—or reserved—the right to pursue perfection of a water right equal to fifty percent of whatever water might be provable and available for application to beneficial use. On the Christophers' side of the ledger, they received the real estate surrounding the Maxwell Springs, which included the right to pursue perfection of

a water right to an undivided half of the water available from the Maxwell Springs. The deed does no more than allocate the opportunity evenly between them.

{27} The Christophers cite no authority prohibiting two parties from entering into an arrangement such as we describe. As they note, except for appurtenant rights, water interests are separate from real estate surface interest. *See Hydro Res. Corp.*, 2007-NMSC-061, ¶ 17. We see no reason why this concept does not apply to the inchoate interest the parties were dealing in here.

{28} The most relevant argument the Christophers make is that Owens could not reserve an interest because of the speculative nature of his intent to divert water. The cases cited by the Christophers simply do not apply here. The facts in those cases involve situations in which someone attempts to divert more water from a common source than they can actually use with the intent or purpose of then essentially extorting other potential users of water from the same source. *See Millheiser v. Long*, 1900-NMSC-012, ¶¶ 30-32, 10 N.M. 99, 61 P. 111 (holding that simply because claimants had diverted the entire run of the water at issue did not give them the ability to claim a right to all the water when they could not and had not put it to beneficial use); *see also New Mercer Ditch Co. v. Armstrong*, 40 P. 989 (Colo. 1895) (same); *Toohey v. Campbell*, 60 P. 396, 397 (Mont. 1900) (same); *Power v. Switzer*, 55 P. 32, 34-35 (Mont. 1898) (same). There is no evidence of such diversion or intent here.

13

{29} Further, we observe that the same objection—if available at all—could be made to the Christophers' use and potential development of the water. There is no evidence that they had any plan for diversion and use of the Maxwell Springs water when they purchased the High Nogal Ranch. As argued by the Christophers, the same charge of speculation could be made as to their reservation of "water rights for commercial, domestic, municipal, industrial, and subdivision purposes from Maxwell Springs per Grantors' pending application No. SP-4896" when they sold the High Nogal Ranch. There is no evidence that the Christophers had then applied any of the water to beneficial use. There is no indication that a permit had been issued prior to the sale or that one has been issued to date. As such, it could be argued that the Christophers did not have a water right to convey or reserve either. At most, they had an inchoate right that might eventually blossom into a water right. *See Hanson v. Turney*, 2004-NMCA-069, ¶¶ 9-10, 136 N.M. 1, 94 P.3d 1.

{30} It is important to note what we are not deciding. The record does not allow any discussion about the nature of the relationship between Owens (now Sonora) and the Christophers. The district court was correct in denying the motion for summary judgment asking it to hold that a joint development venture had been formed. The record does not support such a ruling in the summary judgment context; and—as with other aspects of this case—may never, even after discovery. Neither are we deciding

14

whether the deed made Owens (now Sonora) joint tenants or co-tenants or simply separate owners of an undivided half interest. We leave this and other related questions to further litigation on remand. We decide only that Owens and the Christophers could divide the potential for water as between themselves and, as between them, the arrangement is enforceable.

{31} Given our ruling that Owens had a cognizable interest in the development of the Maxwell Springs, which he could reserve, we must also reverse the district court orders concerning the failure of the warranty covenants in Owens' deed to Sonora and applying the doctrine of merger. Sonora's cross-claim was based on the district court's ruling that Owens had nothing to convey to Sonora. Our ruling means that Owens did have something he could convey. Thus, the rationale for the cross-claim has evaporated. We reverse on that basis only. We venture no opinion on the law relied on by the district court for its ruling.

**CONCLUSION**

{32} We reverse and remand for further proceedings consistent with this Opinion.

{33} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

15

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**


_____
**M. MONICA ZAMORA, Judge**